UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-601581-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

LARRY BILL ODOM,

                Defendant.
_____/



FILED by _____ D.C.

SEP 1 1 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · W.P.B.

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District

Judge Daniel T.K. Hurley (DE 53) for disposition of all pending pretrial criminal motions. Pending

before the Court is Defendant's Motion to Suppress Evidence (DE 49), filed July 22, 2008. The

Government filed a Response (DE 55) on August 5, 2008. The Court held an evidentiary hearing

on September 10, 2008. This matter is ripe for review.

## DEFENDANT'S WRITTEN MOTION TO SUPPRESS

Defendant asks the Court to suppress evidence seized during a warrantless search of his

vehicle. Defendant claims the search is not valid under the automobile exception to the warrant

requirement because there were no exigent circumstances. Specifically, Defendant asserts that, at

the time of the search, law enforcement had the only set of keys to the  locked vehicle within 175

miles and knew that all suspects connected to the drug deal being investigated were in custody, that

no other individuals connected to the vehicle were in the vicinity, and that the vehicle was 175 miles

away from Defendant's home in Frostproof, Florida. Thus, Defendant asserts, the vehicle was

secured for all purposes and law enforcement should have obtained a search warrant. Accordingly,

Defendant argues that any evidence seized as a result of the search should be suppressed.

## GOVERNMENT'S RESPONSE

The Government asks the Court to deny Defendants' Motion on grounds that the search of Defendant's vehicle was conducted pursuant to the automobile exception to the warrant requirement, which requires only that the police have probable cause and that the vehicle searched is operational. The Government asserts that law enforcement unquestionably had probable cause to search Defendant's vehicle for drugs. The Government notes that Defendant does not dispute this point. Additionally, the Government argues that law enforcement had every reason to believe Defendant's vehicle was fully operational, *i.e.* capable of functioning, at the time of the search. Thus, according to the Government, the requirements of the automobile exception are met and Defendant's Motion should be denied.

## EVIDENTIARY HEARING

### Detective Jeffrey Jenkins

Detective Jeffrey Jenkins testified at the evidentiary hearing. Detective Jenkins graduated from Eckerd College with a bachelor's degree in sociology and a concentration in criminal justice. Upon graduating from college, Detective Jenkins joined the Fort Lauderdale Police Department, where he has been employed as an officer for the past seven years. Detective Jenkins is currently assigned to the Specialized Investigation Division, Major Narcotics Unit, where he is responsible for investigations involving drug trafficking. Detective Jenkins stated that he has been involved in several "buy-bust operations," which he described as undercover operations by narcotics detectives to catch unsuspecting drug dealers and their associates. Detective Jenkins testified that he took part in the police operation resulting in Defendant's arrest and was present during the search of

2

Defendant's van.

Detective Jenkins testified that, on May 19, 2008, a confidential source ("CS") made a recorded phone call to Joseph Digristine at 10:55 a.m. to arrange for the purchase of two ounces of crystal methamphetamine for $4,600. Based on this recorded call, Detective Jenkins and his supervisor set up an operational plan to investigate the drug deal. According to Detective Jenkins, Digristine and the CS engaged in approximately eleven more phone calls during the course of that day in order to set up a time and location for the drug deal. Ultimately, they agreed to meet at the CS' apartment in Fort Lauderdale later that night. Digristine informed the CS, who informed Detective Jenkins, that the drugs would be arriving from the Polk County area, which was several hours away in driving distance.

An arrest team organized by Fort Lauderdale's Police Department, which included Detective Jenkins, set up surveillance in and around the CS' two bedroom apartment. Detective Jenkins explained that the deal was scheduled to take place in the CS' bedroom and that the arrest team set up in a second locked bedroom of the apartment. The CS was fitted with a digital recording and listening device which allowed the officers in the second bedroom to hear what was happening in the CS's bedroom. In addition to the arrest team, a police sergeant was stationed outside the apartment to monitor the parking lot.

At approximately 6:45 p.m., Digristine arrived at the CS' apartment. Detective Jenkins stated that he overheard Digristine giving directions to the CS' apartment to someone over the phone. Approximately 30 minutes later, the police sergeant stationed outside advised the arrest team that he observed a Plymouth van with three suspects arrive in the apartment complex's parking lot. Defendant was the driver of the van. Around that same time, Detective Jenkins overheard a

3

discussion between Digristine and the CS about sending the elevator down for the suspects to come up to the apartment. All three suspects came up to the apartment. The CS asked where the drugs were and one of the suspects said the drugs were in the van, after which the CS gave the agreed upon takedown signal to the arrest team. Digristine and the three suspects were arrested. The officers conducted a pat-down search of the four men for officer safety.

Shortly after the arrest, Detective Jenkins and the other officers went to the van after re-confirming with the CS that the suspects had told him the drugs were located in the van. A deployed narcotics canine sniffed the exterior of the van and alerted officers to the presence of narcotics in the left rear corner panel of the van's bumper on the driver's side. The canine alerted to the same area during a subsequent sniff of the van's interior. The officers searched that area of the van and recovered an aerosol can with a false compartment containing a pair of boxers and 57 grams of crystal methamphetamine. Detective Jenkins indicated that he was present during the search of the van. When asked if he believed the van was fully operational, Detective Jenkins responded yes based on his belief that it had just been driven a long distance from Polk County.

All four men were interviewed by police. Three of the four men, including Digristine and Defendant, gave tape-recorded statements admitting their involvement in the drug deal. One of the men, Fernando Martinez, stated that he had only placed the aerosol can in the panel of the van, but did not know of its contents. Based on this statement and the interviews with the other three men, the police determined that Martinez did not know of or participate in the drug deal. According to Detective Jenkins, the police turned the van over to Martinez at Defendant's request so that Martinez could drive the van back to Frostproof, Florida to avoid having the van impounded.

DISCUSSION

The issue before the Court is whether the warrantless search of Defendant's van violates the Fourth Amendment, which preserves the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While the Fourth Amendment generally requires law enforcement officers to obtain a warrant supported by probable cause before conducting a search, one exception to this warrant requirement involves the search of automobiles. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005), cert. denied, 548 U.S. 903 (2006). Under the automobile exception, if "'a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" U.S. v. Watts, 329 F.3d 1282, 1285 (11th Cir. 2003) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)); see also Magluta, 418 F.3d at 1182 (police officers "can search any container in an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime"). Thus, the automobile exception has two requirements: (1) law enforcement must have probable cause to believe the vehicle contains contraband, and (2) the vehicle must be readily mobile.

Probable Cause

Probable cause for a search exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Goddard, 312 F.3d 1360, 1363 (11th Cir.2002) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Here, the evidence shows that law enforcement knew of several recorded phone conversations during the day on May 19, 2008 between Digristine and the CS to set up the sale of

5

crystal methamphetamine. The CS informed law enforcement that Digristine had informed him that the drugs would be arriving from several hours away in Polk County and would be brought to the CS' Fort Lauderdale apartment. Upon Digristine's arrival at the CS' apartment, law enforcement overheard him giving directions to the apartment to someone over the phone. Thirty minutes later, law enforcement observed a van driven by Defendant arrive at the parking lot of the apartment complex. The three suspects in the van went up to the CS' apartment and, while inside, law enforcement heard them tell the CS that the drugs were in the van. Following the arrest of the four men, a narcotics canine alerted twice to the presence of drugs in the van. Under the totality of these circumstances, the Court finds that law enforcement had probable cause to search the van. Defendant does not challenge this conclusion.

## Ready Mobility of Defendant's Van

Under the automobile exception, law enforcement is excused from obtaining a search warrant only if, in addition to having probable cause to believe the vehicle contains contraband, the vehicle to be searched is readily mobile. Labron, 518 U.S. at 940; Watts, 329 F.3d at 1285. No special exigency is required beyond a showing of the mobility of the automobile. Maryland v. Dyson, 527 U.S. 465, 467 (1999) (per curiam); Watts, 329 F.3d at 1285. The requirement of mobility is satisfied merely if "the automobile is operational." Watts, 329 F.3d at 1286 (quoting United States v. Nixon, 918 F.2d 895, 903 (11th Cir.1990)). Ready mobility is "inherent in all automobiles that reasonably appear to be capable of functioning." Id. at 1285.

Warrantless car searches have been upheld in this circuit even where "the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent." United States v. Hall, 716 F.2d 826, 830 (11th Cir. 1983) (quoting Cody v. Dombrowski, 413 U.S. 433, 441-42

6

(1973)). The Eleventh Circuit has emphaisized that the justification to conduct a warrantless search "does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." U.S. v. Parrado, 911 F.2d 1567, 1571 (11th Cir. 1990)(quoting Michigan v. Thomas, 458 US 259, 261 (1982)); see also United States v. Birdsong, 982 F.2d 481, 483 (11th Cir. 1993) (rejecting claims that a warrantless search was unlawful because defendant was already in police custody and the police had possession of his keys at the time of the search).

Here, the evidence shows that Defendant's van appeared capable of functioning at the time of the search. Law enforcement observed Defendant drive the van into the parking lot, just moments before the search. Moreover, based on the CS' statements and recorded conversations, law enforcement had strong reason to believe the van had just been driven several hours from several miles away with no problem. Based on this evidence, there existed no reason for law enforcement to believe the van was not operational at the time of the search. To the contrary, the evidence points to the conclusion that the van was fully capable of functioning. The clear law of this circuit, cited above, forecloses any argument by Defendant that the search of his van was unlawful because all the suspects were in police custody and that the police had possession of his car keys. Rather, such law supports the Court's conclusion that the requirement of mobility is satisfied in this case.

## RECOMMENDATION

Based on the foregoing, this Court recommends to the District Court that Defendant's Motion to Suppress (DE 49), filed July 22, 2008, be DENIED. A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District

Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this _____11_____ day of September, 2008.

ANN E. VITUNAC
(United States Magistrate Judge

Copies to:
Honorable Daniel T.K. Hurley
All counsel of record